SCHOONOVER, Judge.
The appellants, parents of R.H. and G.K., appeal an order finding that R.H. and G.K. were dependent children. We find that the evidence presented to the trial court was insufficient to support a finding of neglect under section 39.01(27), Florida Statutes (1985), and, accordi:..g;y, reverse the order of dependency.
Section 39.01(27) provides in part:
“Neglect” occurs when the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the person primarily responsible for the child’s welfare deprives a child of, or allows a child to be deprived of, necessary food, clothing, shelter, or medical treatment or permits a child to live in an environment when such deprivation or environment causes the child’s physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired.
The children here were alleged to be dependent under this statute because they were permitted to live in an environment which caused their physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired in that on the day in question, the children were found unsupervised, hungry, and dirty, and the whereabouts of the mother was unknown. The dependency petition also alleged that on the same date the mother gave a nonexistent address for her place of residence and that, therefore, she had no residence for herself and the children. The trial court’s order finding the children dependent adopted those allegations as its findings of fact.
At the adjudicatory hearing, the state, in attempting to prove the allegations of the petition, relied mainly on the out of court statements the children made to their grandmother and to the police officer who took them into custody. The children, aged six and four, appeared at their grandmother’s apartment early one morning. They told their grandmother that their aunt had sent them to her house and that they did not know where their mother was. After the children told their grandmother they had not eaten, she fed them and called the police rather than returning the children to the aunt’s apartment, which was in the same building. The police officer who responded to the complaint tried to ascertain the whereabouts, of the children’s mother and, after not being able to do so, took the children into custody. The children told the officer that they had not eaten all day, so he took them to the Burger King restaurant and fed them again. In addition to these statements, there was testimony which indicated the mother failed to provide the HRS caseworker with an address where she resided with the children.
In order to support the trial court’s finding of dependency, the state had the burden of showing by a preponderance of the evidence that the children were unsupervised, hungry, or dirty to the extent that their physical, mental, or emotional health was significantly impaired or in danger of being significantly impaired. § 39.408(2)(b), Fla.Stat. (1985); see also, In the Interest of L.T., 464 So.2d 201 (Fla. 5th DCA 1985). The out of court statements by the children, who may or may not have been competent to testify, together with the mother’s giving a nonexistent address did not satisfy this burden.
First, the children were not unsupervised. The aunt, at the request of the children’s mother, was taking care of them. The aunt had fed them the night before the incident in question and again at breakfast time. She then sent them out to play, and *326 although the children were dirty from playing in the yard, they were not filthy. From the aunt’s vantage point in her apartment, she could see the children in the yard, and there was no danger from their walking four doors down to their grandmother’s apartment, where they had been on many prior occasions. Although the mother did not establish where she was residing that day, the record reflects'that the children had adequate accommodations with their aunt who was primarily responsible for their welfare at the time in question. Furthermore, at the time of the adjudicatory hearing, the mother resided in a clean and amply furnished residence.
Next, although the children told everyone that they were hungry and had not eaten, sworn testimony establishes that they were fed three times in a very short period of time. When the children were taken into custody, they were not distraught, and a physical examination revealed nothing abnormal about R.H.’s physical condition. G.K. also appeared healthy, her general physical condition was normal, and she appeared to be well developed and well nourished.
Since the abovementioned evidence does not establish that the children’s physical, mental, or emotional health was significantly impaired or in danger of being significantly impaired, the court erred in so finding. See In the Interest of G.D.H., 498 So.2d 676 (Fla. 1st DCA 1986). We, accordingly, reverse and remand for proceedings consistent herewith.
CAMPBELL, A.C.J., and FRANK, J., concur.